812

The RIGGS NATIONAL BANK OF WASHINGTON, D. C., Successor by Consolidation to the Washington Loan and Trust Company, Trustee under the Will of Joseph S. Justh, Deceased

v.

The UNITED STATES.

No. 517-57.

United States Court of Claims.

Nov. 12, 1965.

Jones, Senior Judge, dissented in part.

Arthur J. Phelan, Washington, D. C., for plaintiff. J. Bruce Kellison, Washington, D. C., attorney of record. James E. Murray, Hogan & Hartson and Frederick M. Bradley, Washington, D. C., of counsel.

Robert Livingston, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer and Acting Asst. Atty. Gen. John B. Jones, Jr., for defendant. Edward S. Smith, and Philip R. Miller, Washington, D. C., of counsel.

Howe P. Cochran, Washington, D. C., filed a brief for Elmer and Jeanette Justh, amicus curiae.

Ward E. Lattin, Washington, D. C., filed a brief for Charlotte S. Holtman, amicus curiae. Meade C. Patrick of Gardner, Morrison & Rogers, Washington, D. C., of counsel.

Before LARAMORE, Acting Chief Judge, REED, Justice (Ret.), sitting by designation, DURFEE and DAVIS, Judges, and JONES, Senior Judge.

PER CURIAM.

This is a suit by the taxpayer, as trustee under the will of Joesph S. Justh (a District of Columbia decedent), to recover fiduciary income taxes paid during the years 1951 through 1960. The claim is that these taxes should not have been collected because they were levied on income permanently set aside for charita-

ble purposes under the will.[1] As originally presented to the court, the plaintiff's contention was that the will directed the trustee to dispose of the trust's accumulated surplus income, at the end of the trust in 1970, to four charities (named in the will) which were to share the corpus of the trust upon its termination. The defendant countered that the will made no provision at all for this accumulated surplus income, that it would not go to the charities but would pass by intestacy.

Since this issue was wholly one "governed by the local laws of the District of Columbia," this court, after an argument directed to that question of local law, ordered (on January 25, 1963) that "further action herein in this court be and the same is suspended to afford the plaintiff an opportunity to file suit in the United States District Court for the District of Columbia for the purpose of securing an interpretation of decedent's will." Such a suit was brought and the District Court determined that the will did *not* direct that the accumulated surplus income go to the charities; rather, the District Court held, the will did not cover this income and it passed by intestacy to the next of kin. The Riggs National Bank v. Holtman, 221 F.Supp. 599 (1963). This ruling was affirmed by the Court of Appeals for the District of Columbia Circuit. The American National Red Cross et al. v. Holtman, 122 U.S.App.D.C. —, 351 F.2d 746, decided May 18, 1965. The ruling of the Court of Appeals is now final.

The decisions of the District of Columbia courts, which we of course accept, destroy the taxpayer's claim as it was initially argued to us. The will did not direct that the surplus trust income be set aside for, or paid to, the charities. Accordingly, there is no basis for a charitable deduction on that ground.

Taxpayer now raises, however, a secondary ground which is said to sustain recovery of a portion of the refund claimed.[2] The decedent died in 1950 and his will was admitted to probate in April 1951. In August 1951, the taxpayer, as trustee under the will, borrowed $60,000 with which to pay administration expenses, taxes, and debts. This loan was secured by the trust property (i. e., the real estate which was to go, on termination of the trust, to the four charities) and was payable out of the income derived from this property.[3] From 1951 through October 1957, the accumulated surplus income of the trust was used to satisfy this debt of $60,000.[4] The will had authorized the taxpayer-trustee to borrow the amounts needed to pay administration, tax, and debt charges against the estate, "and to secure its repayment by a deed of trust or mortgage upon the real estate hereinbefore described and to repay the same as rapidly as possible from the net rents derived therefrom over and above the annuities hereinbefore set out." The claim now is that the trust income used to repay this loan, in 1951–1957, was permanently set aside by the will for charitable purposes since repayment of this loan (as authorized by the will) operated to free, and therefore increase the value of, the encumbered real estate which was due to pass to the charities upon the termination of the trust in 1970; if the loan was

---

1. Under Section 162(a) of the Internal Revenue Code of 1939 and Section 642(c) of the 1954 Code a deduction is allowed, in computing the net income of an estate or trust, for that part of the gross income which is paid or permanently set aside during the taxable year (under the will creating the trust) for charitable purposes.

2. The total sum claimed in the amended petition was $42,797.79 (plus interest); the amount of taxes at issue on the secondary argument is approximately $23,000 (plus interest).

3. Previously, the real estate had been unencumbered.

4. Thereafter, the surplus income was invested in Government obligations and common trust funds.

not repaid through use of the trust income, the indebtedness would have to be deducted from the distribution to the charities of the proceeds of the sale of the real estate in 1970.

 We consider taxpayer's new contention because it is embraced within the amended petition filed in this court, but we cannot accept the argument.[5] It is now settled by the District of Columbia litigation that, upon the decedent's death, the trust income, as distinguished from the corpus of the real estate, was not destined by the will for charity. We think that, after the decedent's death, such income would not become destined for charity because the trustee and executor used the income to repay a loan needed to satisfy administration expenses, taxes, and debts of the estate. To uphold the deduction in these circumstances would be to grant a far greater allowance for charity than the Internal Revenue Code contemplates. The portion of the estate's residue (i. e., that part of the trust's corpus) which will pass to the charities has already been reflected (at its unencumbered value) in a lessening of the estate tax paid by taxpayer in 1951.[6] With respect to the trust income, the Code provides that, for a charitable deduction to be allowable, the income must be paid or permanently set aside in the taxable year, pursuant to the will, for charitable purposes. In the taxable years 1951–1957, the $60,000 in question was not paid or set aside for charity in any ordinary sense; it was simply used to repay a loan which was thought necessary to pay ordinary estate charges. Repayment of the loan, it is true, freed the real property from the encumbrance imposed by the executor-trustee in 1951 and, in that way, assured the charities of receiving in the end the full residue the will provided for them. But this indirect connection is too remote to be characterized as a permanent setting aside for charity pursuant to the will. Congress did not intend that in a case, as here, in which the will leaves only the corpus to charity, repayment by the executor-trustee of an estate debt out of trust income should lead to a charitable deduction because of some ultimate, tangential effect upon the corpus; satisfaction of most charges against an estate, including estate taxes, can have such an indirect impact and, on taxpayer's theory, would be deductible on charitable grounds. We do not think that is the law. See Estate of Freund v. Commissioner, 303 F.2d 30, 32 (C.A. 2, 1962). In the cases on which taxpayer relies [7] the income (or most of it), as well as the corpus, was designated for charitable purposes.

Taxpayer is not entitled to recover and its petition is dismissed.

JONES, Senior Judge (dissenting in part).

I agree with the first part of the Per Curiam opinion, but the second raises a novel question that apparently has never been specifically decided. It is a matter of great importance and I feel that it

---

5. At the request of the court, both parties filed supplemental memoranda directed solely to the plaintiff's new contention.

6. The estate was allowed a charitable deduction of $49,485.72 in the computation of the estate tax. The real estate (93.-25% of the estate) was and is valued at $325,000. On termination of the trust in 1970, some $257,000 (possibly no more than $242,000) will be distributed in specific bequests before the residue passes to the charities. The expenses of administration, taxes, and debts amounted, up to 1951, to about $78,000.

7. Commissioner of Internal Revenue v. Citizens & Southern Nat'l Bank, 147 F. 2d 977, 978, 980 (C.A.5, 1945); Arthur Jordan Foundation v. Commissioner, 210 F.2d 885, 888–889 (C.A.7, 1954); Hopkins v. Commissioner, 13 T.C. 952, 979 (1949); Rockland Oil Co. v. Commissioner, 22 T.C. 1307, 1311–1312 (1954). In United States v. Bank of America Nat'l Trust & Savings Ass'n, 326 F.2d 51, 53–54 (C.A.9, 1964), the disputed item was corpus held for charity.

should be fully briefed by the parties before a final conclusion is reached.[1]

The case of Riggs National Bank v. Holtman, 221 F.Supp. 599 (D.C.1963), which has become final, definitely holds that the surplus income accumulated since 1957 was not disposed of by the will and will definitely go to decedent's daughter rather than to the four charities named. Therefore, since such surplus income was not permanently set aside for charitable purposes, plaintiff is not entitled to recover any fiduciary income taxes paid upon such surplus income accumulated after 1957.

However, that decision does not touch the question of any income between 1951 and 1957. It, by the terms of the will, might be diverted to the payment of any borrowings made necessary in managing the estate. At the time the will was made it was not known that any borrowing would be necessary but if such borrowing became necessary then a portion of the rental income would be applied to the liquidation of such borrowing.[2]

It thus becomes apparent that the diverting of the accumulating income during 1951 to 1957 to the liquidation of the $60,000 actually borrowed enhanced to that amount the net value of that portion of the final estate that will go to charity after payment of the stipulated legacies. In other words, had no borrowing been necessary the $60,000 which was paid out of rental income to liquidate that amount of borrowing would have gone in its entirety under the Riggs National Bank decision to the sole heir and would thus have reduced by that exact sum the amount that will ultimately be applied to the charitable bequests. The net amount that will finally go to the four charities was thus increased by the $60,000 or rather the amount was not decreased by $60,000 by virtue of the fact that that amount was diverted from what would have otherwise been intestate. If the surplus income had not been used to reduce the mortgage indebtedness, then, upon sale of the trust property in 1970, plaintiff would have been required to deduct the amount of the mortgage loan from the amount distributed to the four charities.

It is undisputed that the trustee under the will was required to pay fiduciary income taxes upon the income produced during the years 1951 to 1957, inclusive. It is also very apparent under the Riggs National Bank decision that the $60,000 actually borrowed for the preservation and management of the estate was the only part of the accumulated income, except the specific annuities, that was disposed of by the will and that only on a contingent basis; that is to liquidate any borrowing necessary for the preservation and management of the estate.

There seems little doubt that the ultimate value of that part of the estate going to charity was increased by $60,000. It was not and could not have been known at the time what amount, if any, would be thus diverted.

Section 162 of the Internal Revenue Code of 1939, as amended, reads as follows:

SEC. 162. NET INCOME.

*The net income of the estate or trust shall be computed in the same manner and on the same basis as in*

---

1. The parties have filed supplemental memoranda briefs, evidently rather hurriedly prepared. The defendant filed a five-page typewritten brief citing only one case—Estate of Freund v. Commissioner, 303 F. 2d 30 (C.A.2d 1962). That case does not dispose of the issue involved here. In view of the importance of the question I think it should be thoroughly briefed in detail by both sides.

2. We quote the second paragraph of the Fifth section of the will:

"In the event said rest, residue and remainder shall be insufficient to pay such charges, then I authorize my said Trustee to borrow such sum as may be necessary to pay the same and to secure its repayment by a deed of trust or mortgage upon the real estate hereinbefore described and to repay the same as rapidly as possible from the net rents derived therefrom over and above the annuities hereinbefore set out."

*the case of an individual, except that—*

(a) There shall be allowed as a deduction \* \* \* any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for [charitable] \* \* \* purposes \* \* \*, or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, \* \* \*. [Emphasis added.]

The income of the estate during the years 1951 to 1957 was subject to a fiduciary income tax which was paid during each of those years. Plaintiff insists that it is entitled to a charitable deduction on the fiduciary income taxes paid upon the surplus income of the trust during the years 1951 through 1957, inclusive, which was paid to reduce the indebtedness of the trust estate since all of the income of the trust during those years, except the annuities, was to be set aside for charitable purposes pursuant to the terms of the Justh will.

Practically no briefing has been done by the defendant on the particular issue now before the court. A number of cases have been cited by the plaintiff in a brief comment. The facts in the case of J. B. Whitehead's Estate, 3 T.C. 40 (1944) (affirmed Commissioner of Internal Revenue v. Citizens & Southern National Bank, 147 F.2d 977 (5th Cir. 1945)), are very similar to those in the pending case. The plaintiff was permitted to recover in that case. Cited also are Rockland Oil Co., 22 T.C. 1307 (1954); Arthur Jordan Foundation v. Commissioner, 210 F.2d 885 (7th Cir. 1954); also Leon A. Beeghly Fund, 35 T.C. 490 (1960); United States v. Bank of America National Trust & Savings Ass'n, 326 F.2d 51 (9th Cir. 1963). See also Commissioner of Internal Revenue v. Burrow Trust, 333 F.2d 66 (10th Cir. 1964).

As was stated in Helvering v. Bliss, 293 U.S. 144, 150–151, 55 S.Ct. 17, 20, 79 L.Ed. 246 (1934):

The exemption of income devoted to charity and the reduction of the rate of tax on capital gains were liberalizations of the law in the taxpayer's favor, were begotten from motives of public policy, and are not to be narrowly construed.

See also Old Colony Trust Co. v. Commissioner, 301 U.S. 379, 57 S.Ct. 813, 81 L.Ed. 1169 (1937) and Edwards v. Slocum, 264 U.S. 61, 44 S.Ct. 293, 68 L.Ed. 564 (1924).

In these circumstances I think that both parties should be requested to thoroughly brief the new issue before the court reaches a final conclusion.

Since the court has now decided not to request the parties to file detailed briefs, I respectfully dissent from the second part of the Per Curiam opinion.